UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CASEY WILLIAMS, TIMOTHY UPTON, JOSHUA HANSEN, RONNIE OAKIE, STEVEN MITCHELL, and DAVID BUJARSKI, | CIV. 14-5020-JLV |
| Plaintiffs, | **ORDER FOR FURTHER DEVELOPMENT OF THE RECORD** |
| vs. | |
| JOHN A. CARGILL, | |
| Defendant. | |

### INTRODUCTION

This diversity action is pending before this court on a complaint filed by plaintiffs Casey Williams, Timothy Upton, Joshua Hansen, Ronnie Oakie, Steven Mitchell, and David Bujarski.  See Docket No. 1.  Plaintiffs were injured in a one-vehicle accident that occurred on March 18, 2013, during which defendant, John Cargill, was driving.  At that time and also presently, plaintiffs were all inmates with the South Dakota Department of Corrections (hereinafter "DOC").  In March 2013, Mr. Cargill was an employee of the same department, having charge of the plaintiffs on that day.  Mr. Cargill now moves to dismiss this action, alleging that plaintiffs cannot meet the amount in controversy requirement of 28 U.S.C. § 1332.  See Docket No. 8.  The district court, the Honorable Jeffrey L. Viken, Chief Judge, referred Mr. Cargill's motion to this magistrate judge for a recommended disposition.  See Docket No. 13.

## DISCUSSION

**A.   Law Applicable to a Motion to Dismiss for Lack of Subject Matter Jurisdiction**

It is axiomatic that this court must have subject matter jurisdiction before it may entertain this action.  See Carton v. General Motor Acceptance Corp., 611 F.3d 451, 455 (8th Cir. 2010) (determination of subject matter jurisdiction as to the amount in controversy under 28 U.S.C. § 1332 must be addressed at the outset); Lang v. Napolitano, 596 F.3d 426, 429 (8th Cir. 2010) (district court erred because it should have dismissed plaintiff's claim where the court lacked subject matter jurisdiction without reaching the merits of those claims).

Federal courts are courts of limited jurisdiction–they may adjudicate only those cases within their articulated jurisdiction under Article III of the Constitution or a valid statute enacted pursuant to Article III.  Marbury v. Madison, 1 Cranch (5 U.S.) 137, 173-80 (1803).  A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. 12(b)(1) challenges the court's authority and competence to hear the case pending before it.  5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure, § 1350, at 64 (3d ed. 2004) (hereinafter "Wright & Miller"); Yankton Sioux Tribe v. United States Army Corps of Engineers, 194 F. Supp. 2d 977, 983 (D.S.D. 2002).  "[I]t is a cardinal rule upheld by countless federal cases that the parties may not create or destroy jurisdiction by agreement or by consent."  5B Wright & Miller, § 1350, at 128.  The issue of a federal court's subject matter jurisdiction, or lack thereof, is

2

central to the tenants of judicial federalism, the distribution of judicial power between state and federal courts.  Id. at 120-33.

Plaintiffs rely on this court's diversity jurisdiction as the basis for bringing this action in federal court.  See 28 U.S.C. § 1332.  Under § 1332, a plaintiff must show diverse citizenship of the parties (a fact not in issue in the present motion), and an amount in controversy exceeding $75,000, exclusive of interest and costs.  Id.  The Supreme Court has set forth what is termed the "legal certainty" test for determining whether the amount in controversy has been met.

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. . . . [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.  Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  "According to the Court, it must appear to a legal certainty that the plaintiff's claim is really for less than the jurisdictional amount to justify dismissal for lack of subject matter jurisdiction."  14B Wright & Miller, § 3702, at 27 (1998).

A general statement from the plaintiff that the amount exceeds $75,000 is sufficient, unless that assertion is challenged by the opposing party through a Rule 12(b)(1) motion.  14B Wright & Miller, § 3702, at 31; Gibbs v. Buck, 307 U.S. 66, 72 (1939).  "Once the propriety of the amount in controversy is

3

challenged," the plaintiffs have the burden under St. Paul Mercury to show that their damages are not legally certain to be less than $75,000. 14B Wright & Miller, § 3702, at 33-34. See also Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000), overruled on other grounds, Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005); Dupraz v. Aventis CropScience USA Holding, Inc., 153 F. Supp. 2d 1102, 1104 (D.S.D. 2001). Plaintiffs must prove the jurisdictional amount in controversy by a preponderance of the evidence. Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC, 620 F.3d 926, 931 (8th Cir. 2010); Drobnak v. Andersen Corp., 561 F.3d 778, 786 (8th Cir. 2009) (citing Missouri ex rel. Pemiscot County v. Western Surety Co., 51 F.3d 170, 173 (8th Cir. 1995)); Dupraz, 153 F. Supp. 2d at 1104.

      In evaluating a Rule 12(b)(1) motion to dismiss based on failure to meet the jurisdictional amount in controversy, courts can decide the motion "in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts." Jessie v. Potter, 516 F.3d 709, 712 (8th Cir. 2008) (citing Osborn v. United States, 918 F.2d 724, 728–30 (8th Cir. 1990)). If the motion is to be decided on disputed facts, the court may conduct an evidentiary hearing and make findings. Jessie, 516 F.3d at 712. See also Dupraz, 153 F. Supp. 2d at 1104 (citing United Food Local 919 v. CenterMark Properties, 30 F.3d 298, 305 (2d Cir. 1994) (stating that where "the pleadings are inconclusive as to the amount in controversy, federal courts may look to other evidence in the record."). See also Deuser v. Vecera, 139 F.3d

1190, 1191 n.3 (8th Cir. 1998); Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 470 (8th Cir. 1993).  By contrast, if the argument is that the undisputed facts fail to establish the amount in controversy, the motion must be resolved on the pleadings alone and a motion akin to summary judgment may not resolve disputed factual issues.  Jessie, 516 F.3d at 712.

"No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."  Trimble, 232 F.3d at 959 (quoting Osborn, 918 F.2d at 730).  When a court elects to look to evidence outside the pleadings, it does not convert the 12(b)(1) motion into a motion for summary judgment.  Deuser, 139 F.3d at 1191 n.3 (citing Osborn, 918 F.2d at 729).

In this matter, plaintiffs have generally asserted in their complaint that their claims represents an amount in controversy in excess of $75,000.  See Docket No. 1.  As noted above, this is insufficient to carry plaintiffs' burden once the amount in controversy is challenged.  Gibbs, 307 U.S. at 72; Trimble, 232 F.3d at 959.  Instead, in response to Mr. Cargill's motion, plaintiffs have the burden to demonstrate by a preponderance of the evidence that their claim exceeds $75,000.  Scottsdale Ins. Co., 620 F.3d at 931; Drobnak, 561 F.3d at 786; Missouri ex rel. Pemiscot County, 51 F.3d at 173.

**B.     Damages Plaintiffs Have Pleaded**

The plaintiffs' complaint herein sets forth a list of damages they are seeking.   First, medical expenses incurred in receiving medical treatment for the injuries they sustained in the automobile accident.   This consists in the medical expenses incurred to date, as well as any future medical expenses causally connected to the accident injuries.

Second, plaintiffs seek compensation for pain, suffering, and emotional distress caused by the accident.   This certainly includes the pain and emotional distress suffered on the day of the accident, but may also include future pain and emotional distress if the injuries take a long time to heal, if future surgeries are contemplated, or if recurring emotional trauma continues to be experienced by any plaintiff.

Third, plaintiffs seek compensation for permanent impairment suffered as a result of the injuries incurred as a result of the accident.

Fourth, plaintiffs seek damages for loss of life's pursuits.

This lawsuit is only a few months old and the instant motion by Mr. Cargill is the only substantive pleading filed aside from the plaintiffs' complaint. Mr. Cargill argues that plaintiffs cannot aggregate their damages nor can they include medical expenses paid to date because those expenses have been paid by the DOC.   Mr. Cargill wants the court to rule, as a matter of law, that the remaining elements of damage as to each plaintiff cannot amount to $75,000.

It is clear that Mr. Cargill is correct in arguing that the plaintiffs in this lawsuit should not be allowed to aggregate their claims to satisfy the amount in controversy requirement. Although the question of aggregation of damages under other factual situations is sometimes murky, it is perfectly clear that separate plaintiffs who have separate claims against the same defendant, even if those claims arise out of the same factual scenario, cannot aggregate their claims to meet the amount in controversy. See 14AA Wright & Miller, § 3704, at 567.

The Supreme Court held in Snyder v. Harris that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement" unless the two plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest." 394 U.S. 332, 335 (1969). This holding, which predates the adoption of the Federal Rules of Civil Procedure, was based on the Court's interpretation of the statutory language "matter in controversy." Id. at 336. Thus, "[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount." Id. (quoting Troy bank v. G.A. Whitehead & Co., 222 U.S. 39, 40 (1911)). See also Spears v. Robinson, 431 F.2d 1089, 1092–93 (8th Cir. 1970).

The Snyder Court specifically rejected the argument that the liberal joinder policy underlying FED. R. CIV. P. 20 supported allowing aggregation of separate plaintiffs' claims. Snyder, 394 U.S. at 340. The Court pointed out that the

7

"amount in controversy" requirement is statutory and jurisdictional and the Federal Rules do not have the power to overrule over a century of settled congressional intent as to jurisdiction.   Id.

Even though it is clear that the plaintiffs in this case cannot aggregate their claims, the court cannot conclude on the present record that each plaintiff is incapable, as a legal certainty, of meeting the $75,000 amount in controversy threshold.   Neither party describes for the court what types of injuries and physical impairment each plaintiff suffered nor what future medical procedures may be necessary or what those procedures may entail.   Mr. Cargill states that all of the plaintiffs are still inmates with the DOC, but neither party states whether release is likely or imminent for any plaintiff.   If release is likely, will that plaintiff or plaintiffs have to pay for his own future medical care post-release himself?

Plaintiffs have asked for damages for permanent impairment.   However, neither party describes for the court what the nature of the impairments are. Did any plaintiff suffer any type of amputation?   Is the impairment a loss of range of motion?   Where?   What percentage loss of motion?

Neither party states whether any of the plaintiffs have continued to suffer emotional distress as a result of reliving the accident.   Neither party tells the court what the nature of the accident really was—a simple roll-over in a wide, shallow ditch, or a perilous landing on a steep incline resulting in a drop off of many hundreds of feet.   Did the vehicle roll just once or many times?   Did tree

limbs penetrate the vehicle body?   Was the interior of the vehicle splashed with blood or did the injuries consist of bumps and bruising?   All of these facts could impact the amount of damages any plaintiff suffered in terms of physical injury as well as emotional distress.

Having received a challenge to the amount in controversy, it is now the plaintiffs' burden to show, by a preponderance of the evidence, that their damages are not legally certain to be less than $75,000.   Scottsdale Ins. Co., 620 F.3d at 931; Drobnak, 561 F.3d at 786; Missouri ex rel. Pemiscot County, 51 F.3d at 173.   The court recognizes that the type of evidence outlined above is typically made known only later in a lawsuit, after full discovery.   However, the court cannot avoid deciding Mr. Cargill's motion or postpone it until later as the motion concerns this court's very power to hear this case.   On the current record before the court, plaintiffs have not carried their burden of demonstrating damages.   Therefore, the court will order further development of the record before ruling on Mr. Cargill's motion to dismiss.

## CONCLUSION

Good cause appearing, the court hereby

ORDERS that plaintiffs have until July 10, 2014, to submit additional pleadings or evidence, including medical records and affidavits if they wish, to demonstrate that the amount in controversy element is met as to each plaintiff. Plaintiffs may, in the alternative, elect to have a live evidentiary hearing to adduce the evidence required.   If the plaintiffs choose the latter option, they

must present the court with a written proposed plan for presenting plaintiffs' testimony if that is desired.   The July 10 deadline may be continued by either party upon a showing of good cause.

    Dated June 10, 2014.

                      BY THE COURT:

                      /s/ *Veronica L. Duffy*
                      VERONICA L. DUFFY
                      UNITED STATES MAGISTRATE JUDGE