UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CASEY WILLIAMS, TIMOTHY UPTON, JOSHUA HANSEN, RONNIE OAKIE, STEVEN MITCHELL and DAVID BUJARSKI,<br><br>           Plaintiffs,<br><br>  vs.<br><br>JOHN A. CARGILL,<br><br>           Defendant. | CIV. 14-5020-JLV<br><br><br>ORDER |

**INTRODUCTION**

Pending before the court is defendant's motion to dismiss. (Docket 8). The court referred defendant's motion to Magistrate Judge Veronica L. Duffy for resolution pursuant to 28 U.S.C. § 636. (Docket 13). On August 5, 2014, Magistrate Judge Duffy filed a report recommending the court grant defendant's motion to dismiss. (Docket 19 at p. 22). Plaintiffs timely filed objections to the report and recommendation. (Docket 20).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). For the reasons stated

below, plaintiffs' objections are overruled.  The court adopts in full the report and recommendation of the magistrate judge.

## DISCUSSION

Plaintiffs' complaint alleges they were injured in a one-vehicle rollover on March 18, 2013, in which defendant John Cargill was the driver.  (Docket 1). Plaintiffs assert diversity jurisdiction under 28 U.S.C. § 1332, alleging they are citizens of the State of South Dakota, Mr. Cargill is a resident of the State of New York and the matter in controversy exceeds $75,000.  Id. ¶ 1.  Mr. Cargill filed a motion to dismiss claiming plaintiffs do not satisfy the controversy requirement of exceeding $75,000 as required by 28 U.S.C. § 1332.  (Docket 8).

The undisputed facts are as follows.  On March 18, 2013, Mr. Cargill was an employee of the South Dakota Department of Corrections ("DOC").  (Dockets 9 ¶ 2 & 11 at p. 3).  At that time, the plaintiffs were all inmates on trustee status with the DOC.  (Docket 9 ¶ 3).  On March 18, 2013, Mr. Cargill was operating a motor vehicle owned by the State of South Dakota and used by DOC.  Id. ¶ 5. Plaintiffs were among the passengers in the vehicle when it was involved in a single vehicle accident.  Id. ¶¶ 5-6.  Each of the plaintiffs received medical care for their injuries by various medical care providers, all of which expenses were paid for by DOC.  (Dockets 9 ¶¶ 9-10 & 11 at p. 3).  DOC is statutorily and legally required to provide reasonable and necessary medical care for plaintiffs while they are under the control of DOC.  (Docket 9 ¶ 8).  Neither plaintiffs nor any third-party insurance policy paid for any medical expenses.  Id. ¶ 10.

Mr. Cargill is no longer a DOC employee. Id. ¶ 2. Mr. Cargill is a resident of the State of New York. (Docket 19 at p. 2 n.2).

Following referral of defendant's motion, Magistrate Judge Duffy entered an order directing plaintiffs "to submit additional pleadings or evidence, including medical records and affidavits if they wish, to demonstrate that the amount in controversy element is met as to each plaintiff. Plaintiffs may, in the alternative, elect to have a live evidentiary hearing to adduce the evidence required." (Docket 14 at p. 9). Plaintiffs' submissions were due by July 10, 2014, but that date could be extended for good cause. Id. at pp. 9-10.

On July 10, 2014, plaintiffs filed a supplement to the record. (Docket 15). On July 22, 2014, plaintiffs filed an addendum to supplement the record.[1] (Docket 17). Attached to the addendum were eleven exhibits relating to plaintiffs Oakie and Mitchell. (Dockets 17-1 through 17-11).

Magistrate Judge Duffy found that as of July 18, 2014, plaintiffs incurred the following medical expenses:

| | |
|---|---|
| Casey Williams | $ 59,911.04 |
| Timothy Upton | $ 5,460.46 |
| Joshua Hansen | $ 5,354.98 |
| Ronnie Oakie | $ 15,298.85 |
| Steven Mitchell | $ 23,234.58 |
| David Bujarski | $      429.85 |

---

[1] Magistrate Judge Duffy accepted plaintiffs' addendum "recogniz[ing] that administrative delays may arise when compiling the medical records of multiple plaintiffs." (Docket 19 at p. 2 n.2).

(Docket 19 at pp. 2-3). Id. at p. 3. All of plaintiffs' medical expenses were paid by DOC. Id. at p. 3. The magistrate judge also found that two of the plaintiffs, Mr. Oakie and Mr. Hansen, are expected to undergo future surgeries with anticipated costs of $42,426[2] and $74,246,[3] respectively. Id.

### A. MAGISTRATE JUDGE'S FINDINGS OF FACT

Plaintiffs' objections to the magistrate judge's findings of fact are summarized as follows:

1. Plaintiffs object to the finding they have not suffered permanent physical impairment. (Docket 20 ¶ 11).

2. Plaintiffs object to the finding they have only demonstrated intangible damages for pain, suffering and emotional distress. Id. ¶ 12.

Each of these objections is addressed separately.

### 1. PLAINTIFFS OBJECT TO THE FINDING THEY HAVE NOT SUFFERED PERMANENT PHYSICAL IMPAIRMENT

The magistrate judge properly concluded "[d]ue to Mr. Cargill's motion, plaintiffs bear the burden to demonstrate, by a preponderance of the evidence, that their claim exceeds $75,000." (Docket 19 at pp. 7-8). The magistrate judge directed "plaintiffs to supply information about whether any of them suffered any permanent physical impairment." Id. at p. 21. The report found "the record is silent. Plaintiffs have not asserted that any one of them has

---

[2] Docket 17-5 at p. 1.

[3] The estimate for surgery was reported as being $74,346. (Docket 17-11 at p. 1). The report and recommendation is amended to correct this typographical error.

4

suffered a permanent impairment. No percentages of impairment are given. No resulting economic loss is asserted. The court cannot guess at these matters and so assumes that there is no such loss." Id.

The magistrate judge specifically instructed plaintiffs to submit affidavits and medical records to substantiate each element of damages or request an evidentiary hearing to provide evidence on damages. (Docket 14 at p. 10). Plaintiffs chose to submit a declaration of counsel which is summarized as follows:

> Casey Williams was lifeflighted to Rapid City Regional Hospital. He suffered a spinal injury, was hospitalized for four days and wore a back brace for four months.[4]
>
> Timothy Upton was transported to the Lead-Deadwood hospital emergency room by ambulance. He suffered neck and back pain and a right hand laceration.[5]
>
> Joshua Hansen was transported to the Lead-Deadwood hospital emergency room by ambulance. He suffered left shoulder pain and abrasions and neck pain.[6] A C6-7 anterior cervical discectomy and fusion are recommended.[7]

---

[4] No medical records were submitted in support of Mr. Williams' damages claim and plaintiffs did not move for additional time to submit additional evidence.

[5] No medical records were submitted in support of Mr. Upton's damages claim and plaintiffs did not move for time to submit additional evidence.

[6] Medical records from a January 2, 2014, examination notes "neck pain with radiation to right arm, finger numbness on right hand digits #1, 2, and 3. Symptoms since March 18, 2013." (Docket 17-10 at p. 1). "Patient rates pain 10/10. Pain worse with lying down, coughing, moving neck rapidly." Id. An EMG noted "severe active Right C7 radiculopathy." Id. at p. 3.

[7] Docket 17-10 at p. 4.

Ronnie Oakie was transported to the Lead-Deadwood hospital emergency room by ambulance. He suffered neck pain[8] and a hand abrasion.[9] A cervical decompression of the left 7th cervical nerve is recommended.[10]

Steven Mitchell was transported to Lead-Deadwood hospital emergency room by law enforcement. He suffered back pain, neck pain, left shoulder pain[11] and had rotator cuff surgery on July 1, 2014.[12]

---

[8] A cervical MRI on July 29, 2013, noted at C6-C7 "there could be some mild posterior displacement of the left ventral C7 nerve root." (Docket 17-4 at p. 2).

[9] A right upper extremity MRI on October 22, 2013, revealed "[l]arge full-thickness rotator cuff tear involving the supra-and infraspinatus tendons . . . . [p]robable complete tear involving the long of the biceps tendon . . . [h]igh riding humeral head with degenerative changes associated with rotator cuff tear. . . . ." (Docket 17-4 at p. 8). A MRI of the left upper extremity on October 22, 2013, revealed "[h]igh-grade partial thickness rotator cuff tear. . . [p]osterior glenoid labral tear . . . . This can occasionaly [sic] affect the suprascapular nerve which may affect the innervation of the infraspinatus muscle." Id. at pp. 9-10.

[10] Docket 17-5 at p. 1.

[11] Medical records of the Black Hills Orthopedic & Spine Center on March 3, 2014, over eleven months after the accident, report Mr. Mitchell's left "shoulder has been hurting him since the accident in March . . . . He has tried a couple of injections and antiinflamatory medications, which has [sic] not helped much at all." (Docket 17-7 at p. 1). Mr. Mitchell had a pain medication injection into his shoulder that day. Id. at pp. 1-2. During an April 30, 2014, medical examination it was noted that Mr. Mitchell "complains of diffuse pain around the left shoulder with radiation down the upper arm. Pain does occasionally radiate into the neck. . . . Patient has tried at least three injections, which unfortunately has [sic] not helped him." Id. at p. 3. Surgery was recommended to repair a possible full thickness tear of the rotator cuff. Id. at p. 4.

[12] Post-operative notes from the surgery indicate there had been a "[m]oderate sized full-thickness rotator cuff tear, left shoulder." (Docket 17-9 at p. 1).

> David Bujarski was transported to Lead-Deadwood hospital emergency room by law enforcement. He suffered right knee pain and back pain.[13]

(Docket 15 at pp. 1-2). Counsel states "all Plaintiffs have suffered extreme emotional distress over the traumatic incident and their injuries." Id. at p. 2.

Plaintiffs' objection advises they "will supplement the record as necessary[]" on each plaintiff's permanent physical impairment. (Docket 20 ¶ 11). The time has passed during which plaintiffs were entitled to present evidence to carry their burden of proof. The magistrate judge invited plaintiffs to supplement the record and present affidavits or other evidence to show by a preponderance of the evidence that each plaintiff's individual damages cross the $75,000 threshold required by 28 U.S.C. § 1332. The report concluded plaintiffs had not carried the burden of proof required by § 1332. The record is void of any evidence contrary to the magistrate judge's conclusion. The court is not permitted to speculate or guess as to each plaintiff's impairment. For these reasons, plaintiffs' objection is overruled.

---

[13]No medical records were submitted in support of Mr. Bujarski's damages claim and plaintiffs did not move for time to submit additional evidence.

### 2. PLAINTIFFS OBJECT TO THE FINDING THEY HAVE ONLY DEMONSTRATED INTANGIBLE DAMAGES FOR PAIN, SUFFERING AND EMOTIONAL DISTRESS

Plaintiffs object to the magistrate judge's finding that the only damages shown are for pain, suffering and emotional distress.  (Docket 20 ¶ 12).  Plaintiffs assert by the very fact of their separate surgeries they have crossed the $75,000 threshold and "[t]he intangible damages [pain, suffering and emotional distress] are considerably less for each of them." Id.  Plaintiffs' only argument is that because their medical bills are significant, they have satisfied the damages threshold provision of § 1332. Id.  The issue surrounding medical expenses will be addressed in the discussion regarding the magistrate judge's conclusions of law.

For purposes of resolving findings of fact, the court finds the report is an accurate statement of the record, specifically the absence of evidence of pain, suffering and emotional distress.  The court is not at liberty to speculate as to the monetary value of each plaintiff's individual pain, suffering or emotional distress.  Plaintiffs have not offered sufficient evidence to satisfy the court by a preponderance that plaintiffs, individually, have suffered pain, suffering, emotional distress or permanent impairment to satisfy the $75,000 damages threshold of § 1332.  For these reasons, plaintiffs' objection is overruled.

Incorporating the additional facts above, the findings of fact contained in the report are adopted.

### B. MAGISTRATE JUDGE'S CONCLUSIONS OF LAW

Plaintiffs object to a number of conclusions of law made by the magistrate judge. (Docket 20 ¶¶ 1-10). Those objections are summarized:

1. The magistrate judge erred as a matter of law by concluding the collateral source rule prohibits plaintiffs from including past medical expenses paid by the DOC in meeting the $75,000 damages threshold of 28 U.S.C. § 1332.

2. The magistrate judge erred as a matter of law by concluding the collateral source rule prohibits plaintiffs from including future medical expenses paid by DOC in meeting the $75,000 damages threshold of 28 U.S.C. § 1332.

Each objection will be addressed separately.

### 1. THE MAGISTRATE JUDGE ERRED AS A MATTER OF LAW BY CONCLUDING THE COLLATERAL SOURCE RULE PROHIBITS PLAINTIFFS FROM INCLUDING PAST MEDICAL EXPENSES PAID BY THE DOC IN MEETING THE $75,000 DAMAGES THRESHOLD OF 28 U.S.C. § 1332

The essence of plaintiffs' objection is that the magistrate judge analyzed the issues of "wholly independent" and "collateral source rule" in South Dakota using the wrong legal principles. It is undisputed all of plaintiffs' medical expenses to the date of filing the complaint were paid by DOC. (Docket 11 at p. 3). The question is whether plaintiffs are entitled to use those medical expenses in meeting the $75,000 damages threshold of § 1332, or whether under South Dakota law the collateral source rule prohibits consideration of those expenses.

The magistrate judge's legal research did not disclose any South Dakota authority defining the term "wholly independent" in applying the collateral

9

source rule.  See Docket 19 at pp. 13-15.  Plaintiffs argue no definition of "wholly independent" is necessary because "[s]ince South Dakota's adoption of the collateral source rule in 1975, courts have successfully applied it without a precise definition."  (Docket 20 ¶ 1).  Plaintiffs' argument is not helpful to the analysis because in order to determine whether the collateral source rule applies to the facts of this case, the court must define "wholly independent."  Without any clear definition from the South Dakota Supreme Court, this court must look elsewhere to obtain a definition and complete its analysis.

The magistrate judge chose to use the definition of "wholly independent" found in Schwartz v. Hasty, 175 S.W.3d 621 (Ky. Ct. App. 2005).  (Docket 19 at p. 15).  Addressing the collateral source rule, the Kentucky Court of Appeals stated " 'A source is wholly independent and therefore collateral when the wrongdoer has not contributed to it and when payments were not made on behalf of the wrongdoer.' "  Id. at 627 (quoting Pustaver v. Gooden, 566 S.E.2d 199, 201 (S.C. Ct. App. 2002)).

Plaintiffs object to the use of this "definition of 'wholly independent' because it is merely persuasive."  (Docket 20 ¶ 2).  The court overrules plaintiffs' objection and finds the definition of "wholly independent" used by Kentucky and South Carolina is persuasive authority which the South Dakota Supreme Court would likely adopt were that court compelled to define "wholly independent."

For application of "wholly independent" in the context of the collateral source rule, the magistrate judge found guidance from Fisher v. Beckles, No. K11C-01-040 WLW, 2014 WL 703755, at *2-4 (Del. Super. Ct. Feb. 10, 2014). (Docket 19 at p. 15).   In a factual setting precisely on point with the facts in this case, the magistrate judge found Fisher instructive.   Id. at p. 16.   In Fischer, the Delaware court concluded a prisoner plaintiff could not recover as damages medical expenses paid by the Delaware Department of Corrections ("DDC") for an injury inflicted by a DDC employee.   Fisher, 2014 WL 703755, at *4.

Plaintiffs object to the court's consideration of Fisher as "illustrative of the issue of the definition of 'wholly independent' because it is merely persuasive." (Docket 20 ¶ 5).   The court finds Fisher is consistent with how the South Dakota Supreme Court would use "wholly independent" in an application of the collateral source rule.   Plaintiffs' objection is overruled.

The magistrate judge found Mr. Cargill was a DOC employee and because of its employee's conduct, DOC was required to provide plaintiffs with medical care.   (Docket 19 at p. 18).   Based on this conclusion, the magistrate judge next concluded "Mr. Cargill and the DOC are not wholly independent of one another, and the plaintiffs should not be allowed to recover medical expenses that were paid by the DOC . . . . especially where the plaintiffs paid no consideration for the medical care provided . . . [which DOC] was legally obligated to provide."   Id. (referencing Fisher, 2014 WL 703755 at *4).

11

Plaintiffs object to the magistrate judge's analysis and conclusions. (Docket 20 ¶ 6).  Plaintiffs argue the court should reject the analysis employed by the magistrate judge and adopt plaintiffs' interpretation of the <u>Restatement (Second) of Torts</u> § 920A Comment B (1979).  <u>Id.</u>  The <u>Restatement</u> comment provides that "[i]f the benefit was a gift to the plaintiff from a third party or *established for him by law*, he should not be deprived of the advantages that it confers."  <u>Id.</u> (emphasis added by plaintiffs).  Plaintiffs are not being deprived of the benefits established by South Dakota law requiring DOC to pay plaintiffs' medical expenses.  Rather, the collateral source rule adopted by South Dakota and applied by this court prohibits plaintiffs from making a double recovery—one recovery from Mr. Cargill's employer and a second recovery from Mr. Cargill.  This is precisely the consequence contemplated by the collateral source rule.

The court adopts the conclusion of the magistrate judge.  The court agrees the collateral source rule bars plaintiffs from recovering from Mr. Cargill for the medical expenses paid by DOC.  Plaintiffs' objections on this issue are overruled.

### 2. THE MAGISTRATE JUDGE ERRED AS A MATTER OF LAW BY CONCLUDING THE COLLATERAL SOURCE RULE PROHIBITS PLAINTIFFS FROM INCLUDING FUTURE MEDICAL EXPENSES PAID BY DOC IN MEETING THE $75,000 DAMAGES THRESHOLD OF 28 U.S.C. § 1332

The magistrate judge separately analyzed whether the collateral source rule would preclude plaintiffs from asserting future surgical expenses as damages for inclusion in the $75,000 threshold of 28 U.S.C. § 1332.  (Docket 19

at pp. 20-22). For purposes of plaintiffs' objection, Mr. Oakies' and Mr. Hansen's future medical expenses are anticipated to be $42,426 and $74,346, respectively. There was no evidence presented as to the present value of these future benefits. See Docket 19 at p. 6 ("[w]here the heart of a cause of action is a claim for future benefits, the amount in controversy is the present value of the claimed future benefit.") (quoting Burns v. Mass. Mut. Life Ins. Co., 820 F.2d 246, 249 (8th Cir. 1987)). Once a plaintiff is released from prison, DOC would no longer be statutorily obligated to pay for future medical care.

The magistrate judge recognized it was important for resolution of the issue whether "any of the plaintiffs were likely to be released from prison anytime in the near future." Id. at p. 20. Plaintiffs did not provide the magistrate judge with any information concerning "whether these men are likely to still be inmates of the DOC at the time of their future surgeries . . . ." Id. Because plaintiffs failed to provide this information to the court, the magistrate judge properly concluded the plaintiffs' silence was "indicative of the fact that plaintiffs will likely continue to be in the custody of the DOC at the time of their future surgeries." Id.

Plaintiffs' objections to the report's conclusions concerning future medical expenses are the same arguments presented in opposition to the application of the collateral source rule for past medical expenses. (Docket 20 ¶ 10). Plaintiffs have not argued one or more of them will be released and no longer in DOC custody at the time of the anticipated future medical procedures so that the collateral source rule could not apply.

13

The court finds the magistrate judge properly resolved the issue of future medical expenses.  Plaintiffs' objection is overruled.

In summary, the court finds the magistrate judge properly evaluated and applied the law on damages qualified for consideration in meeting the $75,000 damages threshold under 28 U.S.C. § 1332.  The court adopts the conclusions of law as stated in the report and recommendation of the magistrate judge. Plaintiffs have not shown by a preponderance of the evidence that the court has diversity jurisdiction under § 1332.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiffs' objections (Docket 20) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 19) is adopted as amended above.

IT IS FURTHER ORDERED that defendant's motion to dismiss (Docket 8) is granted.

IT IS FURTHER ORDERED that plaintiffs' complaint (Docket 8) is dismissed without prejudice.

Dated March 23, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

14